IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

ALFREDA SQUARE,                      *
                                     *
        Plaintiff,                   *     CIVIL ACTION NO. 15-00037-B
                                     *
vs.                                  *
                                     *
CAROLYN W. COLVIN,                   *
Commissioner of Social               *
Security,                            *
                                     *
        Defendant.                   *

ORDER

Plaintiff Alfreda Square (hereinafter "Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security denying her claim for supplemental security income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq*. On October 12, 2015, the parties consented to have the undersigned conduct any and all proceedings in this case. (Doc. 18). Thus, the action was referred to the undersigned to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. Upon careful consideration of the administrative record and the memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner be **AFFIRMED**.

I.   **Procedural History**

Plaintiff filed her application for benefits on August 1,

2011. (Tr. 55). Plaintiff alleged that she has been disabled since October 30, 2009, due to "back problems" and "left knee problems." (Id. at 115, 143).

Plaintiff's applications were denied and upon timely request, she was granted an administrative hearing before Administrative Law Judge Paul Whitson Johnson (hereinafter "ALJ") on March 21, 2013. (Id. at 31). Plaintiff attended the hearing with her counsel and provided testimony related to her claims. (Id. at 33). A vocational expert ("VE") also appeared at the hearing and provided testimony. (Id. at 44). On June 17, 2013, the ALJ issued an unfavorable decision finding that Plaintiff is not disabled. (Id. at 27). The Appeals Council denied Plaintiff's request for review on December 7, 2014. (Id. at 1-2). Therefore, the ALJ's decision dated June 17, 2013, became the final decision of the Commissioner.

Having exhausted her administrative remedies, Plaintiff timely filed the present civil action. (Doc. 1). The parties waived oral argument on October 12, 2015 (Doc. 17), and agree that this case is now ripe for judicial review and is properly before this Court pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II.  Issues on Appeal

  1. **Whether the ALJ erred in rejecting the opinions of Plaintiff's treating physician, Dr. Timothy A. Holt, M.D.?**

  2. **Whether the ALJ's RFC assessment is supported by substantial evidence?**

  3. **Whether the Appeals Council erred in failing to properly consider Plaintiff's updated treatment records?**

## III. Factual Background

Plaintiff was born on June 1, 1967, and was forty-five years of age at the time of her administrative hearing on March 21, 2013.  (Tr. 31, 44, 115).  Plaintiff graduated from high school in 1985 and last worked from May 2008 to June 2009 for a cap manufacturing company sewing baseball caps.  (Id. at 38-39, 44, 155).  Her only other past work was as a cashier in a convenience store from June 2006 to April 2008.[1]  (Id. at 155).

At her hearing, Plaintiff testified that she has pain in her lower back that is a seven to nine on a ten-point pain scale.  (Id. at 40-41).  According to Plaintiff, she cannot bend over and tie her shoes; she cannot pick up a gallon of milk;

---

[1] The ALJ determined that none of Plaintiff's past work was consistent enough to constitute substantial gainful activity. (Tr. 25).

she cannot sweep, mop, or clean;[2] and she cannot drive because of her pain.  (Id. at 41-42).  Plaintiff also testified that she takes her pain medication, Tramadol, every day, and it makes her drowsy, causing her to have to lie down for about four hours a day.[3]  (Id. at 42, 47).  Plaintiff testified that she does not expect to have any further surgeries on her back, nor does she expect to have any surgery at all on her neck.  (Id.).  She testified that she also has trouble with the grip in her dominant right hand.  (Id. at 43).

Plaintiff reported to the Agency that she lives with her family and that her routine consists of getting up in the morning, taking a bath, combing her hair, fixing her breakfast, taking a short walk, watching television, fixing lunch, walking over to her dad or sister's house, going to the store, going to see her aunts, going outside, waiting for her nieces and nephews to get off of the bus, going inside, taking a bath, and getting ready for bed.  (Id. at 165).  Plaintiff reported that she has no problems with personal care, including bathing and combing her hair.[4]  (Id. at 166).  Plaintiff stated that she needs no

---

[2]  In her Report to the Agency, Plaintiff stated that she can sweep and mop "a little."  (Tr. 167).

[3]  Plaintiff testified that Tramadol is the only medication that she takes every day.  (Tr. 47).

[4]  At her hearing, Plaintiff testified that her daughters have to help her with the housework, with combing her hair, and with

reminders to take care of her personal needs or to take her medicine. (Id. at 167). According to Plaintiff, she prepares her own simple meals daily. (Id.). She can iron sitting down and can wash clothes. (Id.). She can handle her own finances. (Id. at 168). She socializes with family, goes to church regularly, and does not need anyone to accompany her. (Id. at 169). Plaintiff reported that she can walk about one quarter of a mile. (Id. at 170). She needs no assistive devices to ambulate. (Id. at 171). In addition, she can follow written and spoken instructions "good," but has trouble finishing what she starts. (Id.). She gets along "well" with authority figures and has never been fired from a job because of problems getting along with people. (Id.).

## IV.  **Analysis**

### A.   **Standard of Review**

In reviewing claims brought under the Act, this Court's role is a limited one. The Court's review is limited to determining 1) whether the decision of the Secretary is supported by substantial evidence and 2) whether the correct legal standards were applied.[5] Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). A court may not decide the facts

---

getting out of the bath tub. (Tr. 41, 43-44).

[5] This Court's review of the Commissioner's application of legal principles is plenary. Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).

anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986). The Commissioner's findings of fact must be affirmed if they are based upon substantial evidence. Brown v. Sullivan, 921 F.2d 1233, 1235 (11th Cir. 1991); Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (holding substantial evidence is defined as "more than a scintilla, but less than a preponderance" and consists of "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."). In determining whether substantial evidence exists, a court must view the record as a whole, taking into account evidence favorable, as well as unfavorable, to the Commissioner's decision. Chester v. Bowen, 792 F. 2d 129, 131 (11th Cir. 1986); Short v. Apfel, 1999 U.S. Dist. LEXIS 10163, *4 (S.D. Ala. June 14, 1999).

### B. Discussion

An individual who applies for Social Security disability benefits must prove his or her disability. 20 C.F.R. §§ 404.1512, 416.912. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); see also 20 C.F.R. §§

6

404.1505(a), 416.905(a).    The  Social  Security  regulations provide  a  five-step  sequential  evaluation  process  for determining if a claimant has proven his disability.[6] 20 C.F.R. §§ 404.1520, 416.920.

In  the  case  *sub  judice*,  the  ALJ  determined  that  Plaintiff has  not  engaged  in  substantial  gainful  activity  since  August  1, 2011,  the  application  date,  and  that  she  has  the  severe impairments  of  cervical  and  lumbar  disc  disease  and  status  post lumbar  fusion.   (Tr.  22).   The  ALJ  further  found  that  Plaintiff

---

[6] The claimant must first prove that he or she has not engaged in substantial  gainful  activity.    The  second  step  requires  the claimant  to  prove  that  he  or  she  has  a  severe  impairment  or combination  of  impairments.    If,  at  the  third  step,  the  claimant proves  that  the  impairment  or  combination  of  impairments  meets or  equals  a  listed  impairment,  then  the  claimant  is automatically  found  disabled  regardless  of  age,  education,  or work  experience.    If  the  claimant  cannot  prevail  at  the  third step,  he  or  she  must  proceed  to  the  fourth  step  where  the claimant  must  prove  an  inability  to  perform  their  past  relevant work.   Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir. 1986).   In evaluating  whether  the  claimant  has  met  this  burden,  the examiner must consider the following four factors: (1) objective medical  facts  and  clinical  findings;  (2)  diagnoses  of  examining physicians;  (3)  evidence  of  pain;  and  (4)  the  claimant's  age, education  and  work  history.    Id.    Once  a  claimant  meets  this burden,  it  becomes  the  Commissioner's  burden  to  prove  at  the fifth  step  that  the  claimant  is  capable  of  engaging  in  another kind  of  substantial  gainful  employment  which  exists  in significant  numbers  in  the  national  economy,  given  the claimant's  residual  functional  capacity,  age,  education,  and work  history.    Sryock v. Heckler, 764 F.2d 834, 836 (11th Cir. 1985).   If the Commissioner can demonstrate that there are such jobs the claimant can perform, the claimant must prove inability to  perform  those  jobs  in  order  to  be  found  disabled.    Jones v. Apfel,  190  F.3d  1224,  1228  (11th  Cir.  1999).    See also  Hale v. Bowen,  831  F.2d  1007,  1011  (11th  Cir.  1987)  (citing  Francis v. Heckler, 749 F.2d 1562, 1564 (11th Cir. 1985)).

does not have an impairment or combination of impairments that meets or medically equals any of the listed impairments contained in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Id.).

The ALJ concluded that Plaintiff retains the residual functional capacity (hereinafter "RFC") to perform a range of light work, except that Plaintiff "can occasionally climb, balance, stoop, kneel, and crouch. In addition, she can frequently, rather than constantly, finger with the right hand. She must avoid concentrated exposure to extreme cold and vibration." (Id. at 23). The ALJ also determined that while Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, her statements concerning the intensity, persistence and limiting effects of the alleged symptoms were only partially credible for the reasons explained in the decision. (Id.).

The ALJ found that Plaintiff has no past relevant work. (Id. at 26). However, utilizing the testimony of a VE, the ALJ concluded that considering Plaintiff's residual functional capacity for a range of light work, as well as her age, education and work experience, there are jobs existing in the national economy that Plaintiff is able to perform, such as "nonpostal mail clerk," "assembler," and "wire worker," all of which are classified as light and unskilled. (Id. at 26, 46). Thus, the ALJ concluded that Plaintiff is not disabled. (Id. at

27).

The Court now considers the foregoing in light of the record in this case and the issues on appeal.

### 1. **Issues**

#### A. **Whether the ALJ erred in rejecting the opinions of Plaintiff's treating physician, Dr. Timothy A. Holt, M.D.?**

In this case, Plaintiff argues that the ALJ erred in rejecting the opinions of her treating physician/surgeon, Dr. Timothy A. Holt, M.D., set forth in a Medical Source Statement ("MSS") and a Clinical Assessment of Pain ("CAP") form completed on February 21, 2013. In those forms, Dr. Holt opined that Plaintiff is unable to maintain gainful employment as a result of her pain. (Doc. 12 at 1-4; Tr. 342-43). The Commissioner counters that the medical evidence does not support Dr. Holt's opinions, and, to the contrary, that Dr. Holt's opinions are inconsistent with the substantial evidence in the case and, thus, were properly discredited. (Doc. 15 at 7-11). Having carefully reviewed the record in this case, the Court agrees that Plaintiff's claim is without merit.

As part of the disability determination process, the ALJ is tasked with weighing the opinions and findings of treating, examining, and non-examining physicians. In reaching a decision, the ALJ must specify the weight given to different medical opinions and the reasons for doing so. See Winschel v.

Commissioner of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011). The failure to do so is reversible error. See Williams v. Astrue, 2009 U.S. Dist. LEXIS 12010, *4, 2009 WL 413541, *1 (M.D. Fla. 2009).

When weighing the opinion of a treating physician, the ALJ must give the opinions "substantial weight," unless good cause exists for not doing so. Costigan v. Commissioner, Soc. Sec. Admin., 2015 U.S. App. LEXIS 2827, *10, 2015 WL 795089, *4 (11th Cir. Feb. 26, 2015) (citing Crawford v. Commissioner of Soc. Sec., 363 F.3d 1155, 1160 (11th Cir. 2004) and Broughton v. Heckler, 776 F.2d 960, 962 (11th Cir. 1985)). The opinion of "a one-time examining physician — or psychologist," on the other hand, is not entitled to the same deference as a treating physician. Petty v. Astrue, 2010 U.S. Dist. LEXIS 24516, *50, 2010 WL 989605, *14 (N.D. Fla. Feb. 18, 2010) (citing Crawford, 363 F.3d at 1160). An ALJ is also "required to consider the opinions of non-examining state agency medical and psychological consultants because they 'are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation.'" Milner v. Barnhart, 275 Fed. Appx. 947, 948 (11th Cir. 2008) (unpublished) (citing 20 C.F.R. § 404.1527(f)(2)(i)). "The ALJ may rely on opinions of non-examining sources when they do not conflict with those of examining sources." Id. (citing Edwards v. Sullivan, 937 F.2d

580, 584-85 (11th Cir. 1991)).

Whether considering the opinions of treating, examining, or non-examining physicians, good cause exists to discredit the testimony of *any* medical source when it is contrary to or unsupported by the evidence of record. Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004). "Good cause may also exist where a doctor's opinions are merely conclusory, inconsistent with the doctor's medical records, or unsupported by objective medical evidence." Hogan v. Astrue, 2012 U.S. Dist. LEXIS 108512, *8, 2012 WL 3155570, *3 (M.D. Ala. 2012). The ALJ is "free to reject the opinion of any physician when the evidence supports a contrary conclusion." Sryock v. Heckler, 764 F.2d 834, 835 (11th Cir. 1985) (per curiam) (citation omitted); Adamo v. Commissioner of Soc. Sec., 365 Fed. Appx. 209, 212 (11th Cir. 2010) (The ALJ may reject any medical opinion if the evidence supports a contrary finding.).

In the present case, the record shows that Plaintiff was treated by Dr. Timothy Holt, M.D., from approximately June 2009 to February 2013, for back problems arising out of an automobile accident that occurred in May 2009. (Tr. 198-99, 214). On June 11, 2009, Plaintiff presented to Dr. Holt with complaints of low back pain, neck pain, and arm pain. (Id. at 221). Upon examination, Plaintiff's range of motion was markedly limited, and a CT scan revealed a fracture at the thoracolumbar junction,

T-12.   (Id. at 221-22).   An MRI taken of Plaintiff's lumbar spine in June 2009 confirmed a "[r]ecent compression fracture of D12 with mild loss of anterior height," but otherwise the lumbar spine was unremarkable.   (Id. at 228, 246).   An MRI of the cervical spine was normal.   (Id. at 227, 245).   On July 9, 2009, Dr. Holt scheduled a discogram x-ray, which again confirmed a fracture at T-12, and Dr. Holt recommended anterior lumbar interbody fusion ("ALIF") surgery at the L4-L5 level.   (Id. at 219).

On January 6, 2010, Dr. Holt performed lumbar fusion surgery at L4-5.   (Id. at 199-203).   The surgery was performed without complications.   (Id. at 201, 213).   At that time, Dr. Holt diagnosed Plaintiff with degenerative disk disease, discogenic pain, instability, and lumbar radiculopathy.   (Id. at 199-203).

On February 4, 2010, Plaintiff had a one month follow-up appointment, and Dr. Holt noted that she was "still having some pain" but "overall [was] much better."   (Id. at 217).   Dr. Holt's examination revealed that Plaintiff's motor testing was 5/5; sensory intact; and x-rays showed anterior spacer in good position and bone graft forming well.   (Id.).   Dr. Holt advised Plaintiff that she could increase her activities and start driving again. (Id.).

Plaintiff returned for her three month follow-up

appointment on April 1, 2010, and Dr. Holt noted that she was still having some pain, but "overall" Plaintiff was "much better." (Id. at 218). Again, Plaintiff's motor testing was 5/5, and "sensory [was] intact." (Id.).

At Plaintiff's six month follow-up appointment on July 1, 2010, Dr. Holt noted that that Plaintiff had been "doing well" but had developed pain in her lower back in the preceding two weeks. (Id. at 216). X-rays showed "anterior spacer in good position" and "good bone graft formed in the spacer itself." (Id.). Dr. Holt diagnosed Plaintiff with "status post lumbar fusion with improvement," "SI joint dysfunction," and low back pain. (Id.). He prescribed a Medrol Dosepak and noted that if Plaintiff's pain did not improve in six weeks, he would consider injections. (Id. at 235).

On December 2, 2010, Plaintiff presented to Dr. Holt for her one year follow-up appointment. Plaintiff complained of pain around her SI joints; however, Dr. Holt noted that her "motor testing [was] 5 over 5;" "sensory intact;" and "range of motion [was] good." (Id. at 236). X-rays showed the anterior spacer to be in good position and "a bridging bone anteriorly." (Id.). Dr. Holt offered Plaintiff injections for pain, and she declined. He instructed her to return in six months. (Id.).

On June 2, 2011, Plaintiff returned to Dr. Holt one year and a half after her surgery. (Id. at 235). Dr. Holt noted

that Plaintiff was reporting "a little bit of pain" around the SI joints but "overall she is doing well." (Id.). Plaintiff rated her pain as a four to five on a ten-point pain scale. (Id. at 265). X-rays showed that the anterior spacer was in good position and that fusion was forming. Dr. Holt advised Plaintiff to return in six months. (Id. at 235).

On December 1, 2011, Plaintiff returned to Dr. Holt two years after her surgery and reported "a little occasional pain over the SI joint area but overall . . . doing really well." (Id. at 263). Upon examination, Dr. Holt noted that "[m]otor, sensory, and vascularly, everything is intact;" "[r]ange of motion is good;" and "[t]here is no Clonus."[7]  (Id.). X-rays showed "a solid incorporated fusion at L4-L5." (Id.). Dr. Holt stated, "[f]or right now we will follow her along, and I will see her back here in the office in six months." (Id.).

On May 14, 2012, Plaintiff presented to the emergency room for an abscess under her arm, and upon examination, the physician noted that her extremities were within normal limits, normal ROM, no tenderness or swelling, and that she had a steady gait with no deficits. (Id. at 330, 333). One month later, on June 14, 2012, Plaintiff presented to Dr. Holt with complaints of low back pain with neck pain that started in the preceding

---

[7] Clonus is "a series of rapid muscle contractions."  See http://www.ninds.nih.gov/disorders/spasticity/spasticity.htm

week.  (Id. at 347).  Plaintiff rated the pain as a seven on the pain scale but reported that it was made better with Aleve.[8] (Id.).  Upon examination, Plaintiff's motor testing was 5/5 in the lower extremities; sensory was intact; but she had pain with range of motion with her neck and pain radiating down her arm. (Id. at 348).  Dr. Holt recommended an MRI of the cervical spine, noting that "she likely has some cervicalgia with radiculopathy."  (Id.).  Dr. Holt further opined that "[a]s far as her lower back goes, she states that she is doing quite well there.  She states that she is significantly improved from her preoperative level.  She can continue to increase her activities from that standpoint."  (Id.).

On January 24, 2013, Plaintiff presented to Dr. Holt with complaints of low back pain, neck pain, and right hand numbness, which she rated as a seven on the pain scale.  (Id. at 344). Dr. Holt ordered an MRI of her cervical spine which showed "no significant appearing abnormality of cervical spine" and "mild bulging, but . . . no evidence of focal disc protrusion."  (Id. at 328).

On February 21, 2013, Plaintiff presented to Dr. Holt for a follow up to her MRI.  (Id.  at 367).  Dr. Holt informed Plaintiff that the MRI showed a small disc herniation at C5-C6

---

[8] Plaintiff completed a questionnaire on this date stating that her pain was "very mild at the moment."  (Tr. 353).

with degenerative changes and nerve root compression.[9]   (Id.).
Dr. Holt discussed with Plaintiff the possibility of fusion
surgery at C5-C6 but told her to go home and think about it and
come back in three months.   (Id.).   Dr. Holt noted that if
Plaintiff decided against surgery, he would release her back to
her family physician.   (Id.).   On that same date, Dr. Holt
completed a Medical Source Statement ("MSS") opining that
Plaintiff cannot "perform sustained work on a regular and
continuing basis" and cannot "maintain attention, concentration
or pace for periods of at least two hours."   (Id. at 342).   In
addition, Dr. Holt completed a Clinical Assessment of Pain form
("CAP") opining that Plaintiff's pain is present to such an
extent as to be distracting to the adequate performance of daily
activities, that physical activity will greatly increase her
pain to such a degree as to cause distraction from a task or
total abandonment of task, and that significant side effects
from her medication may be expected to limit effectiveness of
work duties.   (Id. at 343).   Following this visit to Dr. Holt on
February 21, 2013, Plaintiff did not return until July 18, 2013,
one month after the ALJ issued his decision on June 17, 2013.

---

[9] The actual findings of the radiologist were, "[a]t C5-6, there
is slight disc bulging, but there is no evidence of focal disc
protrusion or spinal stenosis at any cervical level.   No
abnormal signal of cervical cord or cervical vertebrae.   No
significant appearing arthritic change identified."   (Tr. 368).

(Id. at 20, 361, 367).

As the ALJ found, Dr. Holt's opinions that Plaintiff cannot perform sustained work because of back and neck pain are undermined by his own findings that, in the months and years following her car accident in 2009 and her lumbar fusion surgery in 2010, Plaintiff had remarkable improvement, reporting only "a little bit" of "occasional," "very mild" pain, and her physical examinations were essentially normal. (Id. at 216-18, 235-36, 263, 348, 353). Plaintiff even declined injections for pain when Dr. Holt offered. (Id. at 236). When Plaintiff later developed neck pain, Dr. Holt noted that it was made better with Aleve. (Id. at 347).

In addition to being inconsistent with his own findings, Dr. Holt's opinions are inconsistent with the remaining substantial evidence in this case, including the January 2013 MRI of Plaintiff's cervical spine which showed "no significant" abnormality of the cervical spine and only "mild" bulging with "no evidence of focal disc protrusion."[10] (Id. at 328). In addition, a January 2013 x-ray of Plaintiff's lumbar spine showed a "solid fusion" with no abnormalities indicated. (Id.

---

[10] In addition, as discussed, an MRI taken of Plaintiff's lumbar spine in June 2009 showed a "recent compression fracture of D12 with mild loss of anterior height," but otherwise the lumbar spine was unremarkable. (Tr. 228, 246). An MRI of the cervical spine on that same date was normal. (Id. at 227, 245).

at 354).

In addition, Dr. Holt's opinions set forth in the MSS and
CAP forms are inconsistent with the opinions of consultative
examiner, Dr. Huey Kidd, D.O., who evaluated Plaintiff on
November 17, 2011, and found upon examination that she had "full
range of motion and 5/5 strength of the upper extremities," that
she had "full range of motion and 5/5 strength of the lower
extremities," that she was able to heel and toe walk, that she
was able to bend and touch her toes although she did have some
pain when she did it, and that she was able to fully squat and
stand back up with the help of the examination table.  (Id. at
252-53).  Dr. Kidd diagnosed Plaintiff with low back pain and
lumbar radiculopathy and assigned her no limitations.  (Id. at
253).

In addition, Dr. Holt's opinions set forth in the MSS and
CAP forms are inconsistent with the opinions of State Agency
reviewer, Dr. Karen Sarpolis, M.D., who completed a physical
residual functional capacity assessment and found that Plaintiff
could occasionally lift/carry twenty pounds, frequently
lift/carry ten pounds, and stand/walk/sit six hours each in an
eight-hour workday.  (Id. at 320-25).  Dr. Sarpolis found no
manipulative, visual, communicative, or environmental
limitations and only occasional postural limitations.  (Id. at
320-24).

In addition, Dr. Holt's opinions are inconsistent with Plaintiff's reported activities of daily living which include taking care of her own personal needs, cooking, doing laundry, taking short walks every day (approximately a quarter of a mile) with no assistive devices, visiting her family and friends, and shopping. (Id. at 165-71).

Based on the foregoing, the Court finds that the ALJ had good cause to assign no weight to the opinions of Dr. Holt set forth in the MSS and CAP forms. Accordingly, Plaintiff's claim must fail.

### B. Whether the ALJ's RFC assessment is supported by substantial evidence?

Plaintiff also argues that the ALJ erred in finding that she has the residual functional capacity to perform a range of light work with the restrictions that she can only "occasionally climb, balance, stoop, kneel, and crouch," "frequently, rather than constantly, finger with the right hand," and "avoid concentrated exposure to extreme cold and vibration." (Doc. 12 at 6; Tr. 23). The Commissioner counters that substantial evidence supports the ALJ's RFC assessment. (Doc. 15 at 5). Having carefully reviewed the record in this case, the Court finds that Plaintiff's claim is without merit.

Residual functional capacity is a measure of what Plaintiff can do despite his or her credible limitations. See 20 C.F.R. §

404.1545.   Determinations  of  a  claimant's  residual  functional
capacity  are  reserved  for  the  ALJ,  and  the  assessment  is  to  be
based  upon  all  the  relevant  evidence  of  a  claimant's  remaining
ability  to  work  despite  his  or  her  impairments,  and  must  be
supported  by  substantial  evidence.   See  Beech v. Apfel,  100  F.
Supp.  2d  1323,  1331  (S.D.  Ala.  2000)  (citing  20  C.F.R.  §
404.1546  and  Lewis v. Callahan,  125  F.3d  1436,  1440  (11th  Cir.
1997));  Saunders v. Astrue,  2012  U.S.  Dist.  LEXIS  39571,  *10,
2012  WL  997222,  *4  (M.D.  Ala.  March  23,  2012).   Once  the  ALJ  has
determined  the  Plaintiff's  residual  functional  capacity,  the
claimant  bears  the  burden  of  demonstrating  that  the  ALJ's
decision  is  not  supported  by  substantial  evidence.   See  Flynn v.
Heckler,  768  F.2d  1273,  1274  (11th  Cir.  1985).   Plaintiff  has
failed  to  meet  her  burden  in  this  case.

In  her  brief,  Plaintiff  argues  that  the  ALJ  erred  in
affording  more  weight  to  the  opinions  of  State  Agency  reviewer,
Dr.  Sarpolis  (as  set  forth  in  the  May  30,  2012,  physical  RFC
assessment),  than  those  of  Plaintiff's  treating  physician,  Dr.
Holt.   (Tr.  319-25).   However,  as  discussed  above,  an  ALJ  is
"required  to  consider  the  opinions  of  non-examining  state  agency
medical  and  psychological  consultants  because  they  'are  highly
qualified  physicians  and  psychologists  who  are  also  experts  in
Social  Security  disability  evaluation,'"  and  "[t]he  ALJ  may  rely
on  opinions  of  non-examining  sources  when  they  do  not  conflict

with those of examining sources." <u>Milner</u>, 275 Fed. Appx. at 948 (unpublished). Plaintiff argues that Dr. Sarpolis did not have access to her medical records after May 30, 2012, and, thus, that Dr. Sarpolis' opinions were not based on the entire evidence in the record. However, the Court has reviewed all of the medical evidence in this case, including Plaintiff's medical records after May 30, 2012, [11] and finds that Dr. Sarpolis' opinions are consistent with the substantial medical evidence in this case and that Dr. Holt's opinions are not. Having already found that the ALJ had good cause to reject the opinions of Plaintiff's treating physician, Dr. Holt, Dr. Sarpolis' opinions do not conflict with any reliable examining source, and, thus, the ALJ properly relied on those opinions.

Based on the evidence set forth in detail herein, the Court finds that the substantial evidence in this case supports the ALJ's finding that Plaintiff can perform a range of light work, with the stated restrictions. Accordingly, Plaintiff's claim must fail.

### C. Whether the Appeals Council erred in failing to properly consider Plaintiff's updated treatment records?

Last, Plaintiff argues that the Appeals Council erred in failing to properly consider her updated treatment records from

---

[11] This evidence is discussed in detail in relation to Issue 3.

Dr. Holt following the ALJ's decision on June 17, 2013. (Doc. 12 at 8). Plaintiff argues that she submitted additional medical records to the Appeals Council, but it refused to consider them. (Id.; Tr. 1-5, 359-73). The Commissioner counters that the Appeals Council did not err in failing to grant review because the substantial evidence supports the ALJ's decision, notwithstanding the new evidence submitted by Plaintiff. (Doc. 15 at 12). Having carefully reviewed the record in this case, the Court agrees that Plaintiff's claim is without merit.

"With a few exceptions, the claimant is allowed to present new evidence at each stage of [the] administrative process." Ingram v. Commissioner of Soc. Sec. Admin., 496 F.3d 1253, 1261 (11th Cir. 2007). "Evidence submitted for the first time to the Appeals Council is determined under a Sentence Four analysis." Jack v. Commissioner of Soc. Sec., 2015 U.S. Dist. LEXIS 176372, *21, 2015 WL 10353144, *6 (M.D. Fla. Dec. 30, 2015), *report and recommendation adopted*, 2016 WL 706364 (M.D. Fla. Feb. 23, 2016) (citing Ingram, 496 F.3d at 1261). "The Appeals Council must consider new, material, and chronologically relevant evidence and must review the case if 'the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.'" Ingram, 496 F.3d at 1261 (quoting 20 C.F.R. § 404.970(b)). "[W]hen a claimant properly

presents new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous." Id. at 1262. Evidence is material if it is "relevant and probative so that there is a reasonable possibility that it would change the administrative outcome." Caulder v. Bowen, 791 F. 2d 872, 877 (llth Cir. 1986).

In this case, Plaintiff properly submitted her subsequent treatment records to the Appeals Council, as they were created after the ALJ's decision dated June 17, 2013 (id. at 359-73), and the Appeals Council properly considered the new evidence but found that it did not provide a basis for changing the ALJ's decision. (Id. at 1-2). A review of the evidence submitted by Plaintiff reveals that, while it is "new" evidence, it is not "material" evidence because there is not a reasonable possibility that it would change the administrative outcome in this case.

Specifically, the evidence submitted by Plaintiff to the Appeals Council shows that on July 18, 2013, Plaintiff presented to Dr. Holt with complaints of numbness and tingling in her right hand. (Id. at 361). Dr. Holt noted that Plaintiff had a problem with her C5-C6 disc, and he ordered physical therapy for four weeks. (Id.). One month later, on August 15, 2013, Plaintiff was evaluated for physical therapy by Dr. William K. Perkins, DPT. (Id. at 372). Plaintiff reported to Dr. Perkins

that her problems with her neck began approximately one year earlier. (Id.). Plaintiff stated that she had been "independent [with] all activities until recently when she began having neck pain," which she rated as an eight. (Id.). Plaintiff reported that the pain extended to her right arm and that she had numbness and tingling in the right hand, as well as a weak grip. (Id.). Plaintiff reported "a lot of pain in the back as well." (Id.). Dr. Perkins' physical examination revealed that Plaintiff had decreased range of motion by 25% in her cervical spine and pain upon palpation in the right lumbar paraspinal musculature; manual muscle testing in the right arm was 3+/5 with a weakened grip in the right hand; manual muscle testing in the left arm was 5/5; and manual muscle testing in the left leg was 4+/5 and in the right leg was 4/5. (Id.). Dr. Perkins gave Plaintiff home exercises to perform and stated that she had "good rehab potential." (Id.). His goals for the following four weeks included "improv[ing] trunk strength and decreas[ing] pain in the neck and radiating into the arm," attempting to decrease Plaintiff's cervical radiculopathy with cervical traction, and attempting to correct Plaintiff's residual weakness from her back surgery with trunk stability activities. (Id.).

Two weeks later, on August 29, 2013, Plaintiff returned to Dr. Holt, and he diagnosed her with cervical spinal stenosis

with instability at C5-C6, cervicalgia, and cervical radiculopathy. (Id. at 360). Dr. Holt noted that Plaintiff "ha[d] tried physical therapy" and reported some pain relief with traction but that the pain had returned as soon as Plaintiff was out of traction.[12] (Id.). Dr. Holt noted that he had discussed the option of injections with Plaintiff but that she declined because of "problems in the past with steroids." (Id.). Dr. Holt noted that, instead, Plaintiff wished to proceed with anterior cervical discectomy and fusion ("ACDF") surgery at C5-C6. (Id.). However, on October 9, 2013, Dr. Holt's notes indicate that Plaintiff was "a no show for pre-op," and, when the surgery was rescheduled for October 14, 2013, she was again a "no show," and the surgery was cancelled. (Id.). On October 17, 2013, Plaintiff called Dr. Holt's office and reported that the reason that she did not have the surgery "is because something is wrong with her Medicaid." (Id. at 359). However, the notation further provided, "I verified patient's Medicaid. It is active. [Plaintiff] also requested pain medication." (Id.).

In sum, Plaintiff's new evidence shows that she sought treatment from Dr. Holt for neck pain through October 2013 and

---

[12] Dr. Perkins' notes reflect that he advised Plaintiff to continue her physical therapy, but Dr. Holt ordered that it be discontinued. (Tr. 371).

went to physical therapy for two weeks.  The physical therapist noted pain and decreased range of motion in her cervical spine and muscle weakness in her right arm; he gave her home exercises to perform; and he opined that she had "good rehab potential." Nevertheless, Dr. Holt discontinued Plaintiff's physical therapy after only two weeks, offered her injections which she declined, and then offered her fusion surgery, which she accepted but later cancelled.

As the Appeals Council found, nothing in these records suggests that Plaintiff's neck pain, or any other impairment, is disabling.  Therefore, Plaintiff has failed to establish a reasonable possibility that any of this evidence would have changed the administrative outcome.  Because this new evidence is not material, a remand on the basis of new evidence is unwarranted in this case.

**V.    Conclusion**

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner of Social Security denying Plaintiff's claim for supplemental security income be **AFFIRMED.**

**DONE** this **25th** day of **March, 2016.**

**/s/ SONJA F. BIVINS**
**UNITED STATES MAGISTRATE JUDGE**